**UNITED STATES DISTRICT COURT**
**SOUTHEN DISTRICT OF FLORIDA**
CASE NO.:

LATOYA BURTON,

Plaintiff,

v.

CITY TOWING, INC., a Florida Profit Corporation

Defendant.
_____________________________________________/

## COMPLAINT

Plaintiff, LATOYA BURTON ("BURTON" or Plaintiff), by and through her undersigned counsel, hereby files this Complaint against Defendant, CITY TOWING, INC. (hereinafter "City Towing" or "Defendant") and says:

## JURISDICTION AND VENUE

1. This action is brought against Defendant for its unlawful employment practices pursuant to the Title VII of the Civil Rights Act of 1964 ("Title VII"), § 706(f) (42 U.S.C. § 2000e-5(f)), which incorporates by reference the Civil Rights Act of 1964 codified at 42 U.S.C. §§ 2000e, *et seq.*, and the Florida Civil Rights Act ("FCRA"), Chapter 760, Fla. Stat.

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c), because Plaintiff was employed by Defendant in this District; because Defendant, at all material times, conducted and continues to conduct business in the Southern District of Florida; because the actions which give rise to Plaintiff's claims happened within the Southern District of Florida; and because Defendant is subject to personal jurisdiction herein.

4. All conditions precedent to this action have been performed or waived.

**PARTIES**

5. Plaintiff is a resident of Palm Beach County, Florida, over the age of 18 years and otherwise *suis juris*. During all times relevant to this Complaint, Plaintiff was employed by Defendant as a dispatch clerk.

6. Plaintiff is an African American female who experienced harassment and hostile work environment on the basis of her race. Plaintiff is therefore a member of a class protected under the Title VII and the FCRA because the terms, conditions, and privileges of her employment were altered because of her race, African American/Black.

7. Defendant City Towing is a Florida Profit Corporation organized and existing under and by virtue of the laws of Florida and registered to do business within Florida, with its principal place of business in Palm Beach County, Florida. Defendant has, at all times material hereto, conducted substantial and continuous business within the Southern District of Florida, and is subject to the laws of the United States and the State of Florida.

8. Defendant has, at all times material, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA (42 U.S.C. §2000e(b); Fla. Stat. §760.02(7)).

9. Plaintiff has exhausted her administrative remedies by filing a timely charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") which was dually filed with the Florida Commission on Human Relations ("FCHR") pursuant to the work-sharing agreement between the EEOC and the FCHR.

10. Plaintiff filed her charge on or about December 3, 2019, which was no more than 300 days after the last discriminatory event occurred, to wit: November 6, 2019.

11. Plaintiff was issued a Notice of Suit Rights on February 28, 2020. This suit is filed in accordance with that Notice and within the applicable 90-day time limitation (a copy of the Notice is attached hereto as Exhibit "A").

**GENERAL ALLEGATIONS**

12. Plaintiff worked for Defendant as a dispatch clerk from on or about September 17, 2018 until her termination on November 6, 2019.

13. During Plaintiff's employment with Defendant, she reported directly to Tammy Waddell, the Office Manager. Plaintiff also reported to Charlie Gullotta, the Operations Manager. Jeremy was the general manager of Defendant.

14. Kristian Martin and Rachel were Plaintiff's co-workers.

15. Tammy, Charlie, Jeremy, Kristian and Rachel are all Caucasian/White or non-black.

16. During Plaintiff's employment with Defendant, Plaintiff experienced a series of discriminatory treatment due to her race.

17. Upon information and belief, Rachel handwrote three false Employee Warning Notices within a month's time[1], and convinced Charlie to support her and to issue the notices to Plaintiff.

18. The content of the three notices were similar, if not identical, but not true.

19. The three notices were issued to Plaintiff during her probation period, so Plaintiff signed them without protest, for fear of losing her job.

20. The untrue employee warning notices only stopped after Ted, a dispatcher who worked with Plaintiff, called out the inappropriate behaviors of Rachel and Charlie because Ted constantly witnessed Plaintiff performing a satisfactory job.

[1] The three notices were dated on or about October 16, 2018, October 26, 2018, and November 5, 2018 separately.

21. During Plaintiff's employment with Defendant, Kristian constantly made derogatory comments towards Plaintiff and other black employees.

22. On one day at the end of October 2019, Kristian referred light service drivers, mostly black, as monkeys, and said along the lines that "all my monkeys are trained well."

23. Kristian also stated that black people smell.

24. On multiple occasions when the derogatory comments were made, Tammy, Charlie and Jeremy were around and they felt entertained by such derogatory comments and would laugh about them together.

25. On or about November 5, 2019, when Plaintiff walked by Kristian, who commented along the lines that "omg, my office smells like a fucking animal every day."

26. Plaintiff confronted Kristian's comment and advised Kristian to address any issues directly instead of making such derogatory and disrespectful comments.

27. Kristian's response was hostile and Tammy stepped in attempting to deescalate the situation, but failed.

28. Charlie eventually ended the verbal altercation between Kristian and Tammy but only took Plaintiff to his office and commented along the lines that "you know how you girls are and we don't want to see hands throwing in the work place."

29. Charlie then sent Plaintiff home, even though Plaintiff's shift just started while Kristian's shift was about to end in fifteen (15) minutes.

30. On the next day, November 6, 2019, Plaintiff called the outside Human Resource Department to complain about the harassment and hostile work environment from which she had been suffering, only to be told that she had already been terminated.

31. Plaintiff was not provided a reason for her termination, and any reason claimed by Defendant is pretextual.

32. Even if Defendant had a legitimate, non-discriminatory reason, Plaintiff's race was, at minimum, a motivating factor in Defendant's decision for her termination[2].

33. Prior to her termination, Plaintiff was not issued any truthful disciplinary actions for performance deficiencies.

34. Plaintiff has retained the undersigned firm to prosecute this action on her behalf and has agreed to pay it a reasonable fee for its services.

35. Plaintiff is entitled to her reasonable attorneys' fees and costs if she is the prevailing party in this action.

**COUNT I: VIOLATION OF THE CIVIL RIGHTS ACT OF 1964**
**(DISCRIMINATION BASED ON RACE)**

36. Plaintiff re-alleges and re-avers paragraphs 1 – 35 as fully set forth herein.

37. Plaintiff brings this action under Title VII for damages caused by Defendant's discrimination against Plaintiff on the basis of race.

38. Plaintiff is a member of a protected class, to wit, African American/black.

39. Since the beginning of Plaintiff's employment with Defendant, Rachel had been trying to cause Plaintiff to be terminated because of Plaintiff's race, by drafting and convincing Charlie to issue untrue Employee Warning Notices to Plaintiff.

40. Kristian constantly made derogatory and disrespectful comments towards Plaintiff and other black employees, where for multiple occasions Defendant's managers were present, and they condoned and encouraged Kristian's behaviors.

[2] Plaintiff explicitly reserves the right to argue a mixed-motive theory applies to all counts contained herein.

41. The harassment inflicted upon Plaintiff in the office was so frequent and severe that it created a hostile and/or offensive work environment, which eventually lead to Plaintiff's termination.

42. Plaintiff was never provided any reason for her termination, and any reason claimed by Defendant is pretextual.

43. Even if Defendant had a legitimate, non-discriminatory reason, Plaintiff's race was, at minimum, a motivating factor in Defendant's decision for her termination.

44. Defendant's employees, Rachel and Kristian, acted with intentional disregard for Plaintiff's rights as an African American/black person protected under Title VII. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its managers and/or other employees.

45. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII of the Civil Rights Act of 1964, § 706(g) as a direct result of Defendant's discriminatory actions.

46. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under Title VII. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff LATOYA BURTON requests that:

a. The Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's

discriminatory treatment in an amount to be determined at trial and in accordance with the Title VII;

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c. The Court award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

d. The Court award Plaintiff such other and further relief as the Court deems appropriate.

**COUNT II: VIOLATION OF THE CIVIL RIGHTS ACT OF 1964 (HOSTILE WORK ENVIRONMENT)**

47. Plaintiff re-alleges and re-avers paragraphs 1 – 35 as fully set forth herein.

48. Plaintiff brings this action under the Title VII for damages caused by Defendant's unlawful employment practices committed against Plaintiff by allowing and ratifying the harassment Defendant's employees inflicted on Plaintiff on the basis of race.

49. Plaintiff is a member of a protected class, to wit, African American.

50. Since the beginning of Plaintiff's employment with Defendant, Rachel had been trying to cause Plaintiff to be terminated because of Plaintiff's race, by drafting and convincing Charlie to issue untrue Employee Warning Notices to Plaintiff.

51. Kristian constantly made derogatory and disrespectful comments towards Plaintiff and other black employees, where for multiple occasions Defendant's managers were present, and they condoned and encouraged Kristian's behaviors.

52. Both Rachel and Kristian were Plaintiff's co-workers during Plaintiff's employment with Defendant. Rachel's and Kristian's harassment, condoned and encouraged by Defendant's managers, was severe and/or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile or abusive. Defendant's employees' and/or managers' conduct was severe and pervasive from both a subjective and objective perspective.

53. Defendant's employees, Rachel and Kristian, acted with intentional disregard for Plaintiff's rights as an African American person protected under Title VII. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees, and/or other managers.

54. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII as a direct result of Defendant's discriminatory actions.

55. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under Title VII of the Civil Rights Act of 1964. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff LATOYA BURTON requests that:

a. The Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the Civil Rights Act of 1964, § 706(g);

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c. The Court award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

d. The Court award Plaintiff such other and further relief as the Court deems appropriate.

**COUNT III: VIOLATION OF FCRA**
**(DISCRIMINATION BASED ON RACE)**

56. Plaintiff re-alleges and re-avers paragraphs 1 – 35 as fully set forth herein.

57. Plaintiff brings this action under the Florida Civil Rights Act ("FCRA"), Fla. Stats. § 760.01 *et seq*., for damages caused by Defendant's harassment against Plaintiff.

58. Plaintiff is a member of a protected class, to wit, African American.

59. Since the beginning of Plaintiff's employment with Defendant, Rachel had been trying to cause Plaintiff to be terminated because of Plaintiff's race, by drafting and convincing Charlie to issue untrue Employee Warning Notices to Plaintiff.

60. Kristian constantly made derogatory and disrespectful comments towards Plaintiff and other black employees, where for multiple occasions Defendant's managers were present, and they condoned and encouraged Kristian's behaviors.

61. The harassment inflicted upon Plaintiff in the office was so frequent and severe that it created a hostile and/or offensive work environment, which eventually lead to Plaintiff's termination.

62. Plaintiff was never provided any reason for her termination, and any reason claimed by Defendant is pretextual.

63. Even if Defendant had a legitimate, non-discriminatory reason, Plaintiff's race was, at minimum, a motivating factor in Defendant's decision for her termination.

64. Defendant's employees, Rachel and Kristian, acted with intentional disregard for Plaintiff's rights as an African American/black person protected under FCRA. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its managers and/or other employees.

65. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of FCRA.

66. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under FCRA. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff LATOYA BURTON requests that:

a. The Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the FCRA;

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not

been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c. The Court award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and

d. The Court award Plaintiff such other and further relief as the Court deems appropriate.

**COUNT IV: VIOLATION OF FCRA**
**(HOSTILE WORK ENVIRONMENT)**

67. Plaintiff re-alleges and re-avers paragraphs 1 – 35 as fully set forth herein.

68. Plaintiff brings this action under the Title VII for damages caused by Defendant's unlawful employment practices committed against Plaintiff by allowing and ratifying the harassment Defendant's employees inflicted on Plaintiff on the basis of race.

69. Plaintiff is a member of a protected class, to wit, African American.

70. Since the beginning of Plaintiff's employment with Defendant, Rachel had been trying to cause Plaintiff to be terminated because of Plaintiff's race, by drafting and convincing Charlie to issue untrue Employee Warning Notices to Plaintiff.

71. Kristian constantly made derogatory and disrespectful comments towards Plaintiff and other black employees, where for multiple occasions Defendant's managers were present, and they condoned and encouraged Kristian's behaviors.

72. Both Rachel and Kristian were Plaintiff's co-workers during Plaintiff's employment with Defendant. Rachel's and Kristian's harassment, condoned and encouraged by Defendant's managers, was severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile or abusive. Defendant's employees'

and/or managers' conduct was severe and pervasive from both a subjective and objective perspective.

73. Defendant's employees, Rachel and Kristian, acted with intentional disregard for Plaintiff's rights as an African American person protected under FCRA. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees, and/or other managers.

74. Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of FCRA as a direct result of Defendant's discriminatory actions.

75. Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for her protected rights under FCRA. Defendant, by and through its officers, and/or supervisors, authorized condoned and/or ratified the unlawful discriminatory employment practices of its director or nurses. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum according to proof at trial.

WHEREFORE, Plaintiff LATOYA BURTON requests that:

a. The Court grant Plaintiff judgment against Defendant to compensate her for past and future pecuniary losses, including injury to her professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with the FCRA;

b. The Court require Defendant to reinstate Plaintiff to the position at the rate of pay and with the full benefits Plaintiff would have had if Plaintiff had not

been discriminated against by Defendant; or, in lieu of reinstatement, award front pay;

c. The Court award Plaintiff the costs of this action, together with her reasonable attorneys' fees incurred herein, pursuant to the applicable statute; and

d. The Court award Plaintiff such other and further relief as the Court deems appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff LATOYA BURTON hereby demands trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

Dated: May 26, 2020

LAW OFFICES OF CHARLES EISS, P.L.
Attorneys for Plaintiff
7951 SW 6th Street, Suite 112
Plantation, Florida 33324
(954) 914-7890 (Office)
(855) 423-5298 (Facsimile)

By: /s/ Charles M. Eiss
CHARLES M. EISS, Esq.
Fla. Bar #612073
chuck@icelawfirm.com
TIEXIN YANG, Esq.
Fla. Bar #1010651
tiexin@icelawfirm.com